[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14178
Non-Argument Calendar

_____

Agency No. A18-229-818

DAVID SEBASTIAN-SOLER,
a.k.a.
David Sebastian,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 8, 2020)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

David Sebastian-Soler seeks review of the Board of Immigration Appeals' denial of his second motion to reopen removal proceedings. The Immigration Judge had issued the original order of removal based on Mr. Sebastian-Soler's prior conviction for an aggravated felony. The BIA affirmed that order, and we upheld it on appeal. The BIA later denied his first motion to reopen and we dismissed his petition for review for lack of jurisdiction.

The BIA has now denied Mr. Sebastian-Soler's second motion to reopen, determining that it was both time-barred and number-barred and that Mr. Sebastian-Soler had not demonstrated that equitable tolling was warranted. In reaching this conclusion, it addressed some of the merits of Mr. Sebastian-Soler's arguments as well. Because we agree in full with the BIA's analysis, we deny Mr. Sebastian-Soler's petition.[1]

## I

This is the third time Mr. Sebastian-Soler has appeared before us. We have already told the story of his arrival into and residence in the United States, the circumstances leading up to his removal proceedings, and the fate of his first motion to reopen. *See Sebastian-Soler v. U.S. Att'y Gen.*, 409 F.3d 1280 (11th Cir. 2005)

---

[1] We deny Mr. Sebastian-Soler's motion for leave to file a supplemental appendix.

(*Sebastian-Soler I*) (appeal from BIA order affirming order of removal); *Sebastian-Soler v. U.S. Att'y Gen.*, 748 F. App'x 900 (11th Cir. 2018) (*Sebastian-Soler II*) (appeal from BIA order denying first motion to reopen).  We limit ourselves now to those details pertinent to his second motion to reopen.

Mr. Sebastian-Soler, then *pro se*, filed his second motion to reopen in September of 2018, over 15 years after the removal order against him became final in 2003 and a few days after our decision on his first motion to reopen in *Sebastian-Soler II*.  Although he acknowledged that an alien generally may file only one motion to reopen, and that this motion should be filed within 90 days of the entry of the final order of removal, he argued that numerical and time limitations are subject to equitable tolling.  He invoked the BIA's statutory authority to reopen removal proceedings, raising two grounds for relief.

First, he argued that the IJ had erred in concluding that he was removable as an alien convicted of an aggravated felony under 8 U.S.C. §§ 1227(a)(2)(A)(iii) (authorizing removal if an alien is convicted of an aggravated felony after admission into the United States) and 1101(a)(43)(K) (defining an aggravated felony to include certain prostitution-related offenses).  Specifically, Mr. Sebastian-Soler asserted that the IJ failed to properly substitute his initial charge under § 1101(a)(43)(K) with a new charge under § 1101(a)(43)(U) (attempt or conspiracy to commit a listed offense) and § 1101(a)(43)(G) (theft or burglary offenses for which the term of

3

imprisonment is at least one year)—the actual offenses for which he was convicted. Under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), he claimed that this error in his NTA stripped the IJ of jurisdiction over his case.

Second, he argued that he had acquired new and previously unavailable evidence which indicated that he became a naturalized citizen of the United States before his conviction and his removability proceedings. In support of this claim, Mr. Sebastian-Soler submitted a number of records, including two lists of "naturalization petitions recommended to be granted" from the INS which included Mr. Sebastian-Soler's petition but which bore handmade strikethroughs over his petition and others. He contends that these documents and others demonstrate that he became a citizen before he committed any criminal act, entitling him to reopening of his removal proceedings for the IJ to consider the new evidence.

The BIA denied his motion, concluding that Mr. Sebastian-Soler did not meet the statutory criteria for a motion to reopen because his motion was both untimely and number-barred. Further, he had not demonstrated that he pursued his rights diligently or that some extraordinary circumstance stood in the way of proper filing so as to be entitled to equitable tolling. Explaining its decision, the BIA rejected Mr. Sebastian-Soler's first argument that the IJ lacked jurisdiction because of the defective NTA under *Pereira*. It ruled that the record reflected that the IJ had granted the DHS' motion to amend the NTA to charge Mr. Sebastian-Soler with an

aggravated felony under § 1101(a)(43)(U), and that he had not contested that this was the proper charge for his conviction or that he was not removable under this charge. As to his second argument, the BIA concluded that the new evidence he submitted did not show that his petition for naturalization had been granted and did not demonstrate a clear error in the IJ's decision.

## II

We must review our own subject-matter jurisdiction *sua sponte* wherever it may be lacking. *See Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 956 (11th Cir. 2005). We review subject-matter jurisdiction *de novo*. *See Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).

We ordinarily have jurisdiction to hear an appeal from a BIA decision denying a motion to reopen removal proceedings under the BIA's statutory (as opposed to discretionary) authority. *See Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 871 (11th Cir. 2018) (citing *Mata v. Lynch*, 576 U.S. 143, 148 (2015)). "Nothing changes when the Board denies a motion to reopen because it is untimely—nor when, in doing so, the Board rejects a request for equitable tolling." *Mata*, 576 U.S. at 148.

We generally lack jurisdiction, however, to review any final order of removal where an alien was found to be removable for having committed an aggravated felony. *See* 8 U.S.C. § 1252(a)(2)(C). *See also Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1289 (11th Cir. 2014). Only "constitutional claims or questions of law" are

5

excepted from this jurisdictional bar. *See* 8 U.S.C. § 1252(a)(2)(D). The Supreme Court has recently held that the statutory phrase "questions of law" includes the "application of a legal standard to undisputed or established facts." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068 (2020). In *Guerrero-Lasprilla*, the Court specifically determined that the application of the due diligence standard for equitable tolling to undisputed facts is such a question of law. *See id.*

The parties are essentially in agreement about the facts surrounding the prior proceedings and Mr. Sebastian-Soler's efforts to pursue certain claims within those proceedings. Because the application of the equitable tolling standard to these facts is a legal question, we have jurisdiction over Mr. Sebastian-Soler's appeal, despite the aggravated felony bar.

## III

We review the BIA's denial of a motion to reopen removal proceedings for abuse of discretion. *See Gbaya v. U.S. Att'y Gen.*, 342 F.3d 1219, 1220 (11th Cir. 2003). Our review is limited to "determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." *Sow v. U.S. Att'y Gen.*, 949 F.3d 1312, 1317 (11th Cir. 2020) (citation and internal quotation marks omitted).

Motions to reopen may be granted if there is new material evidence that was not available and could not have been discovered or presented at the prior removal

6

hearing. *See* 8 C.F.R. § 1003.2(c)(1). An alien moving to reopen his removal proceedings bears the "heavy burden" of showing that "the new evidence offered would likely change the result in the case." *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 808, 813 (11th Cir. 2006) (citation and internal quotation marks omitted).

An alien may file one motion to reopen within 90 days of his final administrative order of removal. *See* 8 U.S.C. § 1229a(c)(7)(A), (C). As a non-jurisdictional claim processing rule, this 90-day time limit is subject to equitable tolling. *See Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357, 1359 (11th Cir. 2013) (en banc) (per curiam). We have suggested, without deciding, that the number limitation on motions to reopen is also subject to equitable tolling. *See Ruiz-Turcios v. U.S. Att'y Gen.*, 717 F.3d 847, 850 (11th Cir. 2013) (remanding to the BIA to address whether the one-motion rule is a non-jurisdictional claim-processing rule subject to equitable tolling). "[E]quitable tolling generally requires a litigant to show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Id.* at 851 (citation and internal quotation marks omitted).

The BIA denied Mr. Sebastian-Soler's motion to reopen, concluding that he had not shown the diligence or extraordinary circumstances necessary to equitably toll the time and number bars on his motion to reopen. The BIA also touched on some of the merits arguments Mr. Sebastian-Soler raised, although it is not clear

whether this analysis was intended to support its equitable tolling conclusion or was additional to it.   Because the BIA sometimes addressed the merits even after determining that equitable tolling was not appropriate, we discuss both equitable tolling and the merits as necessary.

## A

Mr. Sebastian-Soler's first ground supporting reopening was that the NTA contained a defect which deprived the IJ of jurisdiction under *Pereira*.   Among other grounds for rejecting this argument, the BIA concluded that he had not established that he had been diligent in pursuing this issue or that any extraordinary circumstances prevented him from addressing it in his initial appeal of the removal order.

On appeal, Mr. Sebastian-Soler contests the BIA's determination that he had not exercised diligence, noting that he presented the claim within 90 days of the Supreme Court's decision in *Pereira*.   He does not address the BIA's finding that he had failed to show that there were extraordinary circumstances preventing him from addressing the issue in his initial appeal to the BIA.   That failure to challenge the BIA's determination on exceptional circumstances, by itself, might suffice to dispose of his claim.   *Cf. Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1225 (11th Cir. 2017) (stating that the diligence and extraordinary circumstances prongs of the equitable tolling analysis are "separate elements, both of which must be met before

there can be any equitable tolling" in the context of the statute of limitations for filing a 28 U.S.C. § 2554 habeas petition); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground[.]").

But even if Mr. Sebastian-Soler had properly challenged both the diligence and exceptional circumstances prongs, we do not view the BIA's determinations as abuses of discretion. Although Mr. Sebastian-Soler claims the error in his NTA was not discovered until prior counsel was preparing his brief in *Sebastian-Soler II*, as the BIA noted he was represented by counsel during his removal hearing. Counsel objected to the erroneous charge on the NTA at the hearing, but subsequent counsel did not pursue the issue in its appeal brief to the BIA. Mr. Sebastian-Soler has not explained how this conduct can be considered diligent. Nor has he explained what exceptional circumstances prevented counsel from pursuing the issue in its appeal brief to the BIA.[2]

*Pereira* is of no help, even if we were to conclude that the case—issued after the BIA denied Mr. Sebastian-Soler's first motion to reopen—justified his delay in pursuing this issue. *Pereira* held that a putative NTA that fails to specify the time

---

[2] To the extent Mr. Sebastian-Soler argues that his previous attorneys' failure to pursue this issue is an extraordinary circumstance, he has not exhausted that claim.

or place of removal proceedings does not cut short the required time period of continuous physical presence in the United States that an alien must have accrued in order to be eligible for cancellation of removal (i.e., it does not trigger the so-called "stop-time rule"). *Pereira*, 138 S. Ct. at 2110. Although *Pereira* cited the information that an NTA must provide—time and place of removal proceedings as well as the charges against the alien, among other things, *see id.*—, it was silent as to whether a defective NTA fails to vest an IJ with jurisdiction over removal proceedings. Since *Pereira*, we have clarified that a defective NTA does not mean that the IJ lacked jurisdiction. *See Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1153–55 (11th Cir. 2019).

Because the BIA did not abuse its discretion in refusing to toll this claim, and because Mr. Sebastian-Soler's claim would fail nonetheless, we deny his petition as to this issue.

**B**

Mr. Sebastian-Soler's second ground supporting reopening is based on "recently discovered," "previously unavailable" evidence purportedly revealing that he became naturalized as a U.S. citizen before his felony conviction and removal proceedings. Although the BIA stated that his evidence and arguments did not establish extraordinary circumstances, it also discussed the merits of his claim.

Much of Mr. Sebastian-Soler's brief on appeal focuses on the new evidence that he claims establish his nationality, including (1) two INS lists of "naturalization petitions recommended to be granted," which included Mr. Sebastian-Soler's name and petition but indicated that his petition and others had been crossed out by hand, (2) two corresponding federal district court orders granting the recommended petitions on the referenced lists, without specifying that any of the petitions were excepted, and (3) a 1984 administrative order by a federal district judge designating the INS office located at 7880 Biscayne Boulevard in Miami as an "Office of the Clerk." *See* Br. for Pet'r 18–65.

This evidence is unavailing and fails to persuade us that the BIA abused its discretion in denying Mr. Sebastian-Soler's motion.

On the question of equitable tolling, the BIA did not err in concluding that, even if Mr. Sebastian-Soler had diligently pursued his rights, he failed to show exceptional circumstances. Exceptional circumstances are events that are "beyond the control of the alien, such as "battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances." 8 U.S.C. § 1229a(e)(1).

In making the case that he faced exceptional circumstances, Mr. Sebastian-Soler argues that, despite his continuous efforts to gather his naturalization records,

the two district court orders were unavailable until courthouse employees in the Southern District of Florida discovered the boxes of records during renovations of the courthouse. We are hard-pressed to conclude that this administrative or bureaucratic difficulty, however inconvenient, is on par with the more extreme examples of exceptional circumstances and hardship offered by the INA. *C.f. Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999) (declining to equitably toll an untimely habeas motion after concluding that postal service inefficiencies, though outside of the petitioner's control, could have been avoided by sending the motion earlier or not sending through regular mail); *Avila-Santoyo*, 713 F.3d at 1363 n.5 (stating that there is no material difference between "exceptional circumstances" as used in INA regulations and the general "extraordinary circumstances" necessary for equitable tolling in the habeas context and other areas). Moreover, Mr. Sebastian-Soler does not explain his delay in submitting the new evidence with a new motion to reopen from the time of discovery of these records.

Even if Mr. Sebastian-Soler's claim could overcome the time and number bars, the BIA did not err in discussing the merits and determining that the new evidence would not change the result in the case. First, record evidence—including a district court order denying referenced petitions for naturalization, including Mr. Sebastian-Soler's—convincingly demonstrates that Mr. Sebastian-Soler's petition

was denied for lack of prosecution in December of 1993.  Second, the new evidence does not show that Mr. Sebastian-Soler actually met the requirements for naturalization under the controlling law at the time, as outlined in *Sebastian-Soler I*, 409 F.3d at 1284–85.  Specifically, after a preliminary examination of the candidate, and a recommendation to confer citizenship by a designated examiner, a district court had to hold a final hearing on the petition and the petitioner had to take an oath of renunciation and allegiance in open court.  *See id.* at 1284.  Notwithstanding Mr. Sebastian-Soler's contrary interpretation of the facts and the applicable law, that legal determination regarding naturalization requirements is binding on us under the prior panel precedent rule.  *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).  And, neither the two district court orders nor the 1984 administrative order indicate there was any final hearing, or that Mr. Sebastian-Soler made his oath in open court.

Finally, the new evidence does not reasonably permit the inference that Mr. Sebastian-Soler was naturalized, as he suggests.  Mr. Sebastian-Soler's name was crossed out of each of the lists referenced in the two district court orders granting naturalization petitions.  Although he dismisses these handmade strikethroughs, the clerk certified each list as a true and correct copy.  Similarly, and as the BIA reasonably concluded, a plain reading of the 1984 administrative order does not

13

demonstrate that it conferred on INS personnel the role of granting naturalization petitions.

For these reasons, the BIA did not abuse its discretion in denying Mr. Sebastian-Soler's petition as to this issue.[3]

## IV

Because we conclude that the BIA did not abuse its discretion in refusing to reopen Mr. Sebastian-Soler's removal proceedings, Mr. Sebastian-Soler's petition is due to be denied.

**PETITION DENIED.**

---

[3] On appeal, Mr. Sebastian-Soler suggests that his case should be transferred to a district court for a hearing on his nationality claim under 8 U.S.C. § 1252(b)(5)(B) because the new evidence "raise[s] inferences" that create genuine issues of material fact about his nationality. For the same reasons that we conclude that this evidence would not change the result in his removal proceedings, we do not believe it presents genuine issues of material fact about his nationality.